O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013

Title: NOEL G. LESLEY SR., ET AL., V. OCWEN FIN. CORP., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                            None Present

**PROCEEDING (IN CHAMBERS):**    **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is a Motion to Dismiss ("Motion") filed by Defendants Ocwen Financial Co. and Litton Loan Servicing, LP ("Defendants") on December 7, 2012. Mot. (Dkt. 15). After considering the moving papers and the opposing papers, the Court GRANTS the Defendants' Motion and DISMISSES Plaintiffs' Complaint.[1]

### I. Background

All of the facts that follow are those alleged by Plaintiffs and are interpreted in the light most favorable to them.

On July 6, 2006, Noel Lesley Sr. and Debra L. Lesley ("Plaintiffs") executed a deed of trust in favor of Countrywide Home Loans, Inc. ("Countrywide") for $301,500.00. Notice of Removal ("Removal") (Dkt. 1) Ex. C. This deed was secured by Plaintiffs' property, located at 12419 9th Avenue, Victorville, CA 92395-9532 ("the property"). *Id.*

On December 13, 2008, Noel Lesley Sr. and Debra L. Lesley filed an action in Orange County Superior Court against Countrywide and Litton Loan Servicing, LLC ("Litton"). First Amended Complaint ("FAC") (Dkt. 11) ¶ 5; *Lesley v. Countrywide*

---

[1] The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; L. R. 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013

                                                                    Page 2

---

*Home Loans, Inc.*, No. 30-2008-00116811-CU-BT-CJC (Orange County Sup. Ct. July 29, 2010). That complaint alleged causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Cal. Bus. & Prof. Code § 17200. FAC ¶ 5. This complaint was later amended to include claims of negligent and intentional infliction of emotional distress. *Id.* On August 24, 2009, Plaintiffs' complaint was consolidated with another action, which was based on common allegations concerning the origination of mortgage promissory notes and deeds of trust. FAC ¶ 8. On May 1, 2009, the parties agreed to a stipulated stay in order to attempt to settle their disputes. FAC ¶ 9. At the time, counsel for Litton stated that the case was being stayed in order to finalize loan modifications, since all plaintiffs qualified. *Id.* During the stay, each of the plaintiffs (other than those herein) were provided with loan modifications of 203%. *Id.* On June 11, 2009, Defendant Litton notified Plaintiffs that they would not be receiving a loan modification because the death of their son and the attendant medical expenses did not qualify as a hardship. *Id.* ¶ 10. Ultimately that case was voluntarily dismissed, for reasons not in the record, on July 29, 2010, on motion by Plaintiffs. *Id.* ¶ 9.

        Eventually, Litton sent Plaintiffs a letter on February 12, 2011, outlining the terms of a potential loan modification agreement. FAC ¶ 13, Ex. A. The record does not reveal why Defendants decided, more than six months after the conclusion of litigation, to consider offering a loan modification to Plaintiffs. According to the letter's terms the modification could be finalized after Plaintiffs completed a trial period plan ("TPP") in which Plaintiffs were expected to pay three payments of $1,900.37 on April 1, May 1, and June 1, 2011. *Id.* Ex. A. The letter stated in relevant part that the "terms of the proposed modification are . . . subject to final approval" and that "Mr. And Mrs. Lesley agree that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." *Id.* Moreover, according to the letter, the details of the loan modification could be negotiated only after Plaintiffs signed a release agreement concerning their claims against Defendants. *Id.* Plaintiffs made all three payments to Litton on time (a fact uncontested by Defendants) along with an additional payment on July 1, 2011. *Id.* ¶ 14. On February 2, 2012, counsel for Litton wrote Plaintiffs to inform them that Litton had been acquired by OCWEN and that Litton was working with OCWEN to finalize the modification. *Id.* ¶ 17. However, on March 24, 2012, OCWEN wrote Plaintiffs informing them that they were not eligible for a home loan modification because they did not make all of the required Trial Period Plan payments on time. *Id.* ¶ 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)　　　　　　　　　　　　　Date: March 13, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

　　　　Plaintiffs then filed the instant case in Orange County Superior Court on April 10, 2012, against Ocwen Financial Corp., Ocwen Loan Servicing LLC (collectively "Ocwen"), Litton, and Bank of America, N.A. (collectively "Defendants"). Removal at 7. On October 9, 2012, the case was removed to this Court from Orange County Superior Court by Litton and Ocwen. Removal (Dkt. 1). Litton and Ocwen then filed a Motion to Dismiss the case on October 16, 2012, followed by Plaintiffs' FAC on November 9, 2012. Mot. (Dkt. 4); FAC (Dkt. 11). The FAC contained five claims based in part on the letter from Litton to Plaintiffs proposing a TPP, which Plaintiffs allege constitutes a contract that Defendants breached by refusing to modify their home loan. FAC ¶¶ 26, 31-32. The FAC further alleged that Litton's 2009 letter informing them that they would not be receiving a loan modification because the death of their son did not qualify as a hardship sufficient to merit loan modification negligently and intentionally caused them severe emotional distress. *Id.* ¶¶ 51, 65-67. Litton and Ocwen Loan Servicing LLC then filed their Motion to Dismiss Plaintiffs' FAC on December 7, 2012, followed by Plaintiffs' Opposition on January 7, 2013. Mot. (Dkt. 15); Opp'n. (Dkt. 17).

## II.　　Legal Standard

　　　　Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

　　　　Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013
                                                                              Page 4

that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

### III. Discussion

Defendants' Motion maintains that Plaintiffs have not alleged facts that, if true, would establish that a contract was formed between the parties. Mot. at 3. In the alternative, Defendants argue that they have not breached their contract because they performed their obligations. *Id.* at 4. Consequently, Defendants maintain that Plaintiffs' breach of contract and breach of covenant of good faith and fair dealing claims should be dismissed. *Id.* at 4-5. Defendants also argue that Plaintiffs' claim that Defendants have violated Cal. Bus. & Prof. Code § 17200 should be dismissed because Plaintiffs have not alleged that Defendants committed any underlying statutory violations. *Id.* at 6. Moreover, the Motion argues that Plaintiffs' negligent infliction of emotional distress ("NIED") claim should be dismissed because Defendants never possessed a duty of care towards Plaintiffs. *Id.* at 10-12. Defendants also allege that Plaintiffs have not successfully pled their claim of intentional infliction of emotional distress ("IIED") because they have not alleged that Defendants engaged in conduct that could be considered outrageous. *Id.* at 12-14. Finally, Defendants also claim that Plaintiffs' claims for NIED and IIED are barred by the statute of limitations. *Id.* at 12, 13.

### A. Plaintiffs' Breach of Contract Claim Fails Because They Do Not Allege Facts Sufficient to Show a Meeting of the Minds on All Material Points.

"[T]o state a claim for breach of contract, the plaintiff must plead: 1) the existence of the contract; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages." *Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 424 n.6 (2004). Further, in California "there is no contract until there has been a meeting of the minds on all material points." *Banner Entm't, Inc. v. Super. Ct. (Alchemy Filmworks, Inc.)*, 62 Cal. App. 4th 348, 357–58 (1998) (emphasis removed). Whether lenders and borrowers who enter into a loan modification TPP have contracted to finalize a loan modification is a fact sensitive question that often turns on the language of the alleged contract. *See, e.g., Nungaray v. Litton Loan Servicing*, *LP*, 135 Cal. Rptr. 3d 442, 444-46 (2011), *modified* (Dec. 1,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013
                                                                                               Page 5

2011); *Lazo v. Bank of Am., N.A.*, C 12-00762 LB, 2012 WL 1831577 at *1-3 (N.D. Cal. May 18, 2012).

       In *Grill v. BAC Home Loans Servicing, LP*, plaintiff brought a claim for breach of contract against his lender ("BAC") for failing to modify his home loan after he complied with the provisions of a trial period plan. 10-CV-03057-FCD GGH, 2011 WL 127891 at *1 (E.D. Cal. Jan. 14, 2011). The court granted defendant's motion to dismiss because the document that allegedly contained the party's contractual obligations—the Home Affordable Modification Trial Period Plan—in fact established the non-existence of a contract. *Id.* at 3-4. The document contained such language as, "[i]f I am in compliance with this Trial Period Plan . . . then the Servicer will provide me a . . . Modification Agreement that would amend . . . the Loan Documents" and "I understand that the Plan is not a modification of the Loan Documents . . . I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan." *Id.* (citations omitted). The court stated that such language established that plaintiff provided the requested documents and made the requested payments as a part of the application process and did not reflect a meeting of the minds between the parties to modify plaintiff's home loan. *Id.*

       The letter from Litton to Plaintiffs is also not, according to its own terms, a contract to modify Plaintiffs' home loan. The letter, submitted by Plaintiffs, states that the "terms of the proposed modification are . . . subject to final approval" and that "Mr. And Mrs. Lesley agree that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." FAC Ex. A. Language like this, that expressly restates the borrower's obligations according to the original loan documents and references a final approval, mirrors the language in *Grill*, and cannot form the basis of a meeting of the minds sufficient to establish a contract. *See Grill*, 2011 WL 127891 at *3-4.

       Recently, in *Lazo v. Bank of America*, a federal district court noted that whether or not TPPs like Plaintiffs' constitute a contract depends on whether or not the loan modification plan is administered under the Home Affordable Modification Program ("HAMP"). *See Lazo*, 2012 WL 1831577 at *1-3. HAMP is a federal program containing specific guidelines concerning repayment terms. *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 541 (N.D. Cal. 2012). These guidelines can provide clarification on points in a contract that would otherwise be ambiguous. *Id.* at 552. However, where such TPPs do not even reference HAMP, they have not been considered definite enough to constitute a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)                  Date: March 13, 2013
                                                                                            Page 6

---

contract. *See Lazo*, 2012 WL 1831577 at *1-3. Because there is no such reference in Plaintiffs' trial period plan letter, substantial ambiguities remain that preclude a meeting of the minds on all material points.

        Moreover, even if the letter did constitute a meeting of the minds on all material points, Plaintiffs have not alleged that they performed or were excused from performing all conditions of the agreement. The letter states that the loan modification will follow a release agreement regarding Plaintiffs' original claims. FAC Ex. A. However, Plaintiffs fail to allege that such an agreement exists or has been executed. Therefore, because Plaintiffs fail to allege that they have performed their own contractual obligations, Defendants cannot have breached their own subsequent obligations to modify Plaintiffs' home loan. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 396 (1990) ("Where contractual liability depends upon the satisfaction or performance of one or more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action.").

        For the reasons stated above, the Court GRANTS the Motion to Dismiss Plaintiffs' breach of contract claim WITHOUT PREJUDICE. If Plaintiffs choose to amend their complaint with respect to their breach of contract claim, failure to allege facts showing that both parties agreed on all the material points and thus formed a contract, as well as failure to plead their own performance of those contractual obligations, will likely result in dismissal with prejudice.

       **B.**        **Because Plaintiffs' Breach of Contract Claim Fails, Their Breach of the Covenant of Good Faith and Fair Dealing Claim Must Also Fail.**

        Where one party unfairly frustrates another party's right to receive the benefits of a contract, the frustrating party has breached the implied covenant of good faith and fair dealing. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 326-27 (2000). Therefore, in order for a breach of implied covenant of good faith and fair dealing claim to survive, there must be an underlying contract. *See id.* (noting that the implied covenant of good faith and fair dealing exists in order to prevent parties from unfairly frustrating each other's "right to receive the *benefits of the agreement actually made*"). Because Plaintiffs have not pled facts that amount to breach of contract, a claim for breach of implied covenant of good faith and fair dealing cannot survive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013
                                                                           Page 7

For the reasons stated above, the Court GRANTS the Motion to Dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim WITHOUT PREJUDICE. In the event that Plaintiffs amend their FAC and do not include a prima facie case of breach of contract, their breach of implied covenant of good faith and fair dealing claim will likely be dismissed with prejudice.

      **C.**        **Plaintiffs Fail to State a Claim for Violation of the Unfair Competition Law Because They Do Not Allege (1) Unlawful, (2) Unfair, or (3) Fraudulent Conduct.**

In order to state a claim under Cal. Bus. & Prof. Code § 17200 (known as the Unfair Competition Law or "UCL"), Plaintiffs must allege that Defendants engaged in one of five types of prohibited conduct: (1) an unlawful business practice, (2) an unfair business act or practice, (3) a fraudulent business act or practice, (4) untrue or misleading advertising, (5) or any act prohibited by Cal. Bus. & Prof. Code §§ 17500-17577.5. *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1065 (C.D. Cal. 2003). Plaintiffs have alleged that Defendants engaged in unlawful, unfair, and fraudulent business practices. *See* FAC ¶ 44 ("as part of a systematic, methodical and general practice of defrauding their customers . . . If Defendants are not forced to comply with their common law and statutory duties . . . they will continue to act in such an unlawful and unfair manner").

      **1.**        **Plaintiffs Fail to State a Claim for Unlawful Business Practices Because They Do Not Allege That Defendants Violated Any Statute.**

The unlawful prong of the UCL proscribes "anything that can be properly be called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001) (internal quotations omitted). Practices that are forbidden by law only include statutory violations, and do not include common law violations such as breach of contract. *Nat'l Rural Telecomm. Co-op.*, 319 F. Supp. 2d at 1074-75. For example, in *National Rural Telecommunications Co-op. v. DIRECTV, Inc.*, a class of cable users claimed that DIRECTV violated California's UCL by unlawfully breaching their service contract. *Id.* at 1065. The court concluded that the plaintiff's claim failed as a matter of law because common law violations such as breach of contract cannot form the basis of an unlawful business practice. *Id.* at 1074-75. Plaintiffs' response to this argument is simply to assert that they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013
           Page 8

have validly set forth a UCL violation claim because "Plaintiffs have made the necessary allegations concerning their contract claims." Reply (Dkt. 17) at 10. However, because breach of contract claims cannot form the basis of a UCL violation claim, Plaintiffs' claim must fail as a matter of law.

Therefore the Court GRANTS the Motion to Dismiss Plaintiffs' Cal. Bus. & Prof. Code § 17200 claim based on unlawful business practices WITH PREJUDICE.

### 2. Plaintiffs Fail to State a Claim for Unfair Business Practices Under Any Definition.

The "unfair" prong of the UCL prohibits unfair business practices. Cal. Bus. & Prof. Code § 17200. "Courts have observed that 'there is some uncertainty about the appropriate definition of the word 'unfair' in consumer cases brought under section 17200.'" *Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 55 (2008) (citing *Camacho v. Auto. Club of S. Cal.*, 48 Cal. Rptr. 3d 770, 774 (2006)). This disagreement is the consequence of differing interpretations of the implications of a case cited by Defendants. *Cel–Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).

In interpreting the definition of "unfair business practices" under § 17200, the court in *Cel-Tech* noted that the law "undeniably establishes [] a wide standard." *Cel-Tech Commc'n, Inc.*, 20 Cal. 4th at 182. "[G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate." *Id.* Nevertheless, the court noted that "the law's scope is not unlimited," and "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair." *Id.*

Instead, the court concluded that "unfair business practices" are limited to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 544. This represented a significant narrowing from the court's previous definition, which simply balanced the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Motors, Inc. v. Times-Mirror Co.*, 162 Cal. Rptr. 543, 543 (1980). *Cel-Tech* was clear, however, that this new test applied only in cases involving direct competitors. 20 Cal. 4th at 186.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)                  Date: March 13, 2013
                                                                                              Page 9

       While the *Cel-Tech* test applies only to cases between direct competitors, subsequent courts have disagreed over whether or not the court's holding nevertheless changes the definition of "unfair business practices" in cases between consumers and businesses. *Buller*, 74 Cal. Rptr. 3d at 55. "A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases." *Lazo v. Bank of Am., N.A.*, C 12-00762 LB, 2012 WL 1831577 at *11 (N.D. Cal. May 18, 2012) (citing *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53 (2010)).

       "The test applied in one line of cases requires 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.'" *Lazo*, 2012 WL 1831577 at *11 (citing *Drum*, 106 Cal. Rptr. 3d at 53-54; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 707-08 (2009)). "A second line of cases applies a test to determine whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Lazo*, 2012 WL 1831577 at *11 (citing *Drum*, 106 Cal. Rptr. 3d at 54; *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 636 (2006)). "The test applied in a third line of cases draws on the definition of 'unfair' in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that '(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'" *Lazo*, 2012 WL 1831577 at *11 (citing *Drum*, 106 Cal. Rptr. 3d at 56; *Camacho v. Auto. Club of S. Cal.*, 48 Cal. Rptr. 3d 770, 777 (2006)).

       Plaintiffs' claim fails under the first test because they do not allege that Defendants' conduct violated any public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 106 Cal. Rptr. 3d at 53-54.

       Plaintiffs' claim also fails under the second test because they do not allege that Defendants' conduct was unethical in more than conclusory terms. Courts considering cases with similar facts have concluded that no claim was stated according to this test. *See Lazo*, 2012 WL 1831577 at *12; *see also Lyons v. Bank of Am., NA*, C 11-1232 CW, 2011 WL 6303390 at *1-4, 6 (N.D. Cal. Dec. 16, 2011). In *Lazo*, discussed above, plaintiffs brought a claim of unfair business practices against defendant Bank of America, alleging "that [its] failure to provide them with an offer to permanently modify their loan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013
                                                                Page 10

---

was 'unfair' 'because [Bank of America is] immoral, unethical, oppressive, unscrupulous and/or substantially injurious to mortgage borrowers . . . .'" *Lazo*, 2012 WL 1831577 at *12. The plaintiffs also alleged that "'[Bank of America] entered [into the TPP] without intention of performing it.'" *Id.* However, the court determined that "[t]hese allegations, which merely parrot the standard used in the second line of cases described above, are conclusory and unsupported by any specific facts." *Id.*

Plaintiffs' FAC sets forth similar conclusory allegations that Defendants entered into the TPP with no good faith intention of performing it. FAC ¶ 44. Therefore, under the second test, Plaintiffs' claim fails as well.

Plaintiffs also fail to sufficiently allege that they suffered injury that they could not reasonably have been avoided, as required under the third test. *See Lyons*, 2011 WL 6303390 at *11-12. In *Lyons*, the plaintiff claimed that the defendant engaged in unfair business practices by orally agreeing to modify his mortgage to $2,463.78 for a three month trial period, and then raising that agreed upon payment to $3,824.14. *Id.* at *1. The court concluded that "[t]he alleged injuries suffered by Plaintiffs, a lowered credit score and having to defend against a wrongful foreclosure proceeding, even if caused by Defendants, could have been avoided if Plaintiffs had made timely mortgage payments." *Id.* at *12 (citing *Camacho*, 48 Cal. Rptr. 3d at 779). Plaintiffs similarly could have avoided their injuries if they had made their mortgage payments on time, meaning that they reasonably could have been avoided. In fact, the court in *Lyons* concluded that the defendant's conduct could not constitute an unfair business practice even though it conceded that the defendants may have caused those damages by breaching their contract with the plaintiff. *Id.* In comparison, Plaintiffs' breach of contract claim does not even survive Defendants' motion to dismiss at this stage.

Therefore the Court GRANTS the Motion to Dismiss Plaintiffs' Cal. Bus. & Prof. Code § 17200 claim based on unfair business practices WITHOUT PREJUDICE. If Plaintiffs choose to amend their claim, failure to allege that Defendants engaged in conduct that meets one of the definitions of unfair described above will likely result in dismissal with prejudice.

                  **3.**        **Plaintiffs Fail to State a Claim for Fraudulent Business Practices Because They Do Not Allege Facts That Plausibly Suggest That Defendants Represented They Would Modify Plaintiffs' Mortgage.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)   Date:  March 13, 2013
Page 11

      Plaintiffs also allege that Defendants engaged in fraudulent business practices by inducing them to enter the TPP without ever having the intention of finalizing their loan modification. FAC ¶ 44. To state a claim under the fraudulent prong of the UCL, a plaintiff must allege that he was exposed to a particular misrepresentation as well as the specifics of his reliance upon the misrepresentation. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924 (N.D. Cal. 2012); *see also Baltazar v. Apple, Inc.*, 2011 WL 588209 at *3 (N.D. Cal. Feb. 10, 2011) (noting that UCL claims for fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires the time, place, content of the alleged misrepresentation, identity of the person engaged in the fraud, and circumstances indicating falseness). Because Plaintiffs have not alleged specific facts sufficient to show that Defendants made misrepresentations to them, their claim must fail.

      When an element of the plaintiff's claim is that the defendant made misrepresentations, their claim will fail if they cannot allege facts sufficient to establish the plausibility of any misrepresentation. *Everett v. State Farm General Ins. Co.*, 75 Cal. Rptr. 3d 812, 824 (2008) (finding that plaintiff's claim of fraud must fail because the court found defendant had made no actual misrepresentation). While Plaintiffs allege that Litton made a number of false statements in its letter to Plaintiffs, including their promises to grant Plaintiffs a home loan modification if they completed the TPP, such statements were made with the caveat that they did not modify in any way the original home loan and were subject to final approval by Litton. FAC Ex. A ("After completion of the trial period, the material terms of the proposed modification are estimated to be as follows, which are subject to change, and *to final approval* once the trial modification payments are made and applied to the loan. . . . Mr. And Mrs. Lesley agree that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.") (emphasis added). Considering the explicit warnings to the contrary, it is simply not plausible to suggest that Litton was representing that they would give Plaintiffs a mortgage modification. Plaintiffs have not alleged facts that establish Defendants made a misrepresentation, and their fraud claim must fail.

      Therefore the Court GRANTS the Motion to Dismiss Plaintiffs' Cal. Bus. & Prof. Code § 17200 claim based on fraudulent business practices WITHOUT PREJUDICE. If Plaintiffs choose to amend their claim, failure to allege specific facts showing that Defendants intentionally made a misrepresentation to them will likely result in dismissal with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)                      Date: March 13, 2013

                                                                                                        Page 12

### D. Plaintiffs' Claim of Negligent Infliction of Emotional Distress Fails Because Defendants Owed Plaintiffs No Duty of Care.

The statute of limitations for a claim of negligent infliction of emotional distress is 2 years. Cal. Civ. Proc. Code § 335.1; *see also Miller v. Bank of Am., Nat. Ass'n*, 858 F. Supp. 2d 1118, 1127 (S.D. Cal. 2012) ("In California, intentional and negligent infliction of emotional distress claims have a two-year statute of limitations."). Defendants argue in their Motion that Plaintiffs' claim for NIED is barred by the statute of limitations because their claim is based on conduct that took place more than two years ago. Mot. at 12. Plaintiffs do not respond to Defendants' statute of limitations argument in their Opposition.

"'[W]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)).

A NIED claim accrues in California once the plaintiff has suffered severe emotional distress caused by the defendant's conduct. *Campanano v. Cal. Med. Ctr.*, 45 Cal. Rptr. 2d 606, 610 (1995). However, "the limitations period is tolled '(w)hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974). This assures that the purpose of the limitations statute is served, which is "to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh." *Id.* at 412.

The conduct that Plaintiffs allege caused them emotional distress was Litton's June 11, 2009, Letter denying their mortgage modification, which was also the date they allegedly suffered emotional distress. FAC ¶ 10. This would mean, without tolling, that the statute of limitations ran on their claim on June 11, 2011. Cal. Civ. Proc. Code § 335.1. However, Plaintiffs also allege that they amended their state court Complaint to include claims for NIED and IIED. FAC ¶ 5. Their original complaint was filed on December 13, 2008 and voluntarily dismissed on July 29, 2010. FAC ¶¶ 5, 9. Once they pursued this legal remedy, the statute of limitations was tolled. *Elkins*, 12 Cal. 3d at 414. Neither Plaintiffs nor Defendants specify when the complaint was amended to include Plaintiffs' NIED claim. However, *if* Plaintiffs amended their complaint before October 12, 2009, the statute of limitations would not bar their claim. The statute of limitations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)            Date: March 13, 2013

Page 13

would not bar their claim because, taking into account the tolling period between October 2009 and July 2010, under two years would have passed between the day the statute accrued on their claim and the day they filed the instant complaint in state court. *Id.* ¶ 9. Therefore, Defendants have not met their burden of establishing that the statute of limitations bars Plaintiffs' claim.

Nevertheless, Plaintiffs' claim of NIED must be dismissed because Defendants, as Plaintiffs' lenders, have no duty to refrain from negligent conduct. *See Das v. Bank of Am., N.A.*, 112 Cal. Rptr. 3d 439, 450 (2010). NIED is a form of negligence, an element of which is the existence of a duty to abstain from negligent conduct. *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992). "'[A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Das*, 112 Cal. Rptr. 3d at 450 (quoting *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)); *see also Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1173 (E.D. Cal. 2010) ("Lender-borrower relations do not normally give rise to a duty supporting a negligence cause of action.").

Plaintiffs point out that their NIED claim is not dependent upon their breach of contract claim, but is in fact based on the June 11th letter from Litton to Plaintiffs denying their loan modification. Opp'n. at 12-13. Plaintiffs argue that this denial, which concluded that the death of their son and the attendant medical expenses did not constitute a hardship, was so callous that it constituted a "special circumstance," creating a duty of care between the parties. *Id.* This argument misunderstands what is meant by the term "special circumstance." *See Kim*, 17 Cal. App. 4th at 979-81. Lenders generally owe their borrower no duty of care, *unless* "the [lender] has assumed a duty to [the borrower] in which the emotional condition of the [borrower] is an object." *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1203 (S.D. Cal. 2010) (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807 (1993)). Because Plaintiffs have not alleged that a relationship in which Defendants assumed a duty concerning their emotional condition existed between the parties, Plaintiffs' claim must fail.

For these reasons the Court GRANTS the Motion to Dismiss Plaintiffs' claim of negligent infliction of emotional distress WITHOUT PREJUDICE. If Plaintiffs choose to amend their claim for negligent infliction of emotional distress, failure to allege facts showing that Defendants owed Plaintiffs a duty of care will likely result in dismissal with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)　　　　　　　　　　　　　Date: March 13, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 14

### E. Plaintiffs' Claim of Intentional Infliction of Emotional Distress Fails Because Plaintiffs Fail to Plead Outrageous Conduct.

The statute of limitations for a claim of intentional infliction of emotional distress is also 2 years. Cal. Civ. Proc. Code § 335.1; *see also Miller*, 858 F. Supp. 2d at 1127. Therefore the statute of limitations analysis for Plaintiffs' NIED claim applies to their IIED claim as well.

However, Plaintiffs have failed to state a claim because they do not plausibly allege that Defendants engaged in the necessary "extreme or outrageous conduct" conduct. *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991). An IIED claim requires

> '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct....' Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.

*Christensen*, 54 Cal. 3d at 903 (citation omitted).

"With respect to the 'outrageous conduct' element, courts have set a high bar for what constitutes sufficiently outrageous conduct." *Hailey v. Cohen & Steers Capital Mgmt, Inc.*, 871 F. Supp. 2d 944, 960 (quoting *Trerice v. Blue Cross*, 257 Cal. Rptr. 338, 340 (1989)). The actions of Defendants cannot be considered outrageous because "'[l]iability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, [or] annoyances . . . .'" *Plotnik v. Meihause*, 146 Cal. Rptr. 3d 585, 602 (2012); *see also Haley*, 871 F. Supp. 2d at 960-61. In *Haley*, an employee brought a claim for IIED against her supervisor for insulting and abusive language. *Haley*, 871 F. Supp. 2d at 948-51. The plaintiff requested medical leave after she was diagnosed with lymphoma, a type of cancer. *Id.* at 951. Her supervisor denied her request, "referr[ing] to her medical absence as a 'lifestyle issue' and 'equat[ing] it to a junior partner who wanted time off to coach volley ball.'" *Id.*

Here Plaintiffs also base their IIED claim on allegedly insulting and insensitive language related to an illness. *See* FAC ¶ 87, 88. Plaintiffs allege that Defendants' 2009 Letter baselessly denied their mortgage modification and callously stated that the death of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)                          Date:  March 13, 2013
                                                                                                            Page 15

their son did not qualify as a hardship. *Id.* Plaintiffs allege that this callous disregard for the loss of their child and the attendant medical expenses caused them severe emotional distress that was clearly foreseeable. *Id.* ¶¶ 51, 65-67. However, *Haley* establishes that simply insensitive or insulting language of the type experienced by Plaintiffs does not constitute outrageous conduct, even when the insensitive language belittles serious matters of life and death. *Haley*, 871 F. Supp. 2d at 948-51.

       Nor can a simple mortgage modification denial, without more, constitute outrageous conduct. *See generally Coleman v. Republic Indem. Ins. Co.*, 33 Cal. Rptr. 3d 744, 754 (2005) (noting that California courts have held that delays or denials of insurance claims do not constitute outrageous conduct and therefore cannot form the basis of an IIED claim). A plaintiff may successfully allege outrageous conduct when the defendant knew plaintiff was especially vulnerable or used its position of power to cause the plaintiff's emotional distress. *See Fletcher v. W. Nat'l Life Ins. Co.,* 89 Cal. Rptr. 78, 87 (1970 ) (concluding that plaintiff pled outrageous conduct when defendant not only baselessly denied plaintiff disability benefits, but attempted to coerce him into surrendering his policy for $1,200); *Hernandez v. Gen. Adjustment Bureau*, 245 Cal. Rptr. 288, 292-93 (1988) (concluding that plaintiff pled outrageous conduct by alleging that defendants knew of her deteriorating mental and emotional state, that she was the sole provider for three children, and that it was imperative that she receive her benefits on time). Because Plaintiffs do not allege any such facts, and insulting or offensive language alone of the type experienced by Plaintiffs cannot form the basis of an IIED claim, Plaintiffs' claim must fail.

       For these reasons, the Court GRANTS the Motion to Dismiss Plaintiffs' intentional infliction of emotional distress claim WITHOUT PREJUDICE. In the event that Plaintiffs amend their FAC and do not include facts showing outrageous conduct, their intentional infliction of emotional distress claim will likely be dismissed with prejudice.

### V.      Conclusion

       For the reasons stated above the Court GRANTS WITHOUT PREJUDICE Defendants' Motion to Dismiss Plaintiffs' claims for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violations of California Business and Professions Code Section 17200 based on unfair and fraudulent business practices; (4)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 12-1737-DOC(JPRx)                              Date: March 13, 2013
                                                              Page 16

negligent infliction of emotional distress; and (5) intentional infliction of emotional distress.

      The Court GRANTS WITH PREJUDICE Defendants' Motion to Dismiss Plaintiffs' claims for: (1) violations of California Business and Professions Code Section 17200 based on unlawful business practices.

      Plaintiffs may file a Second Amended Complaint, if at all, on or before April 8, 2013.

      The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                                Initials of Deputy Clerk: jcb